IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DEMETRIUS J. GRANT,                )
                                   )
                    Petitioner     )
                                   )
        vs.                        )     Civil Action No. 07-1570
                                   )     Magistrate Judge Amy Reynolds Hay
HARRY WILSON; DISTRICT             )
ATTORNEY OF ALLEGHENY              )
COUNTY; ATTORNEY GENERAL OF        )
 THE STATE  OF PENNSYLVANIA,       )
                                   )
                    Respondents    )     Re Dkt. Nos. [4] & [49]


**<u>MEMORANDUM OPINION AND ORDER</u>**


HAY, Magistrate Judge[1]


        Demetrius Grant ("Petitioner"), a state prisoner, was convicted by a jury of aggravated

assault and recklessly endangering another person in connection with the June 24, 1993 shooting

of James Mioduski, and consequently was sentenced to incarceration for 10 to 20 years.  These

convictions were simply the latest crimes in a string of criminal acts embarked upon by Petitioner

at the age of eleven with multiple subsequent juvenile delinquency adjudications as well as

several adult convictions for, inter alia, other shootings.[2]  Petitioner has filed a federal habeas

_____

        [1]  In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure
73, the parties consented to have a United States magistrate judge conduct all proceedings in this case,
including the entry of a final judgment.  Dkt. [11], [15].

        [2]  The Court takes judicial notice of the following criminal court dockets of the Allegheny
County Court of Common Pleas.

<u>Commonwealth v. Grant</u>, No. CP-02-CR-0005774-1995 (CCP Allegheny County)(robbery of a motor
vehicle); docket available at:

        http://ujsportal.pacourts.us/DocketSheets/CPReport.aspx?matterID=79939147

petition pursuant to Section 2254, attacking his convictions of shooting James Mioduski.

Petitioner raises a whole host of ineffective assistance of trial counsel and appellate counsel

claims in addition to one other miscellaneous claim. Because the State Courts rejected all but

one of his claims on the merits,[3] and because Petitioner fails to show that the State Courts'

disposition of his claims was contrary to or an unreasonable application of United States

Supreme Court precedent, his petition should be denied.

### A. Relevant Factual and Procedural History

There were several shootings and several victims during a melee that occurred in the

Lawrenceville section of Pittsburgh. Petitioner was only charged with the shooting of Mr.

Mioduski. The facts of the crime and the testimony at trial were aptly summarized by the

Superior Court as follows:

> [Petitioner's] charges resulted from a shooting melee on Butler Street in
> the Lawrenceville section of Pittsburgh, Pennsylvania, on June 24, 1993. James
> Mioduski, the victim, lived in the area with his fiancee, Marsha Fettis, and their
> children.

---

Commonwealth v. Grant, CP-02-CR-0008669-1993(CCP Allegheny County)(aggravated assault in the
May 1993 shooting of two individuals); docket available at:

  http://ujsportal.pacourts.us/DocketSheets/CPReport.aspx?matterID=79976466

Commonwealth v. Grant, CP-02-CR-0003018-1984 (CCP Allegheny County)(aggravated assault in the
February 1984 shooting of a jitney driver); docket available at:

  http://ujsportal.pacourts.us/DocketSheets/CPReport.aspx?matterID=80111327

[3] The one claim not addressed by the State Courts is the last claim contained in Petitioner's
habeas petition, i.e., alleged trial court error in not correctly answering a jury question, which is the sole
claim that does not raise a claim of ineffectiveness. Dkt. [4] at 20. However, the Petitioner never raised
this issue on his direct appeal to the Superior Court, Dkt. [17-7], or on appeal to the Superior Court
during the PCRA proceedings, Dkt. [18-7] at 10, and hence, the issue was waived under state law and is
procedurally defaulted under federal law.

At approximately 11:30 p.m. on June 24, 1993, Ms. Fettis saw her oldest son, James, and her daughter's boyfriend [i.e., Daniel Gunde] arguing with three young black men. A crowd of people became involved. Ms. Fettis went to check on the situation and saw one of the black men point a gun at her daughter's boyfriend. James told her to go back home. Ms. Fettis returned home and asked Mr. Mioduski to go retrieve James. Ms. Fettis watched as Mr. Mioduski went to James and started to bring him back toward the house. She then saw Appellant shoot Mr. Mioduski while his back was turned. At trial, she had no doubt that Appellant was the shooter. Mr. Mioduski was struck while his back was turned and could not identify his shooter.

. . . .

Crystal Groubert was being driven through the area at the time of the incident. She positively identified Appellant as one of the three young black men displaying weapons in a crowd of people engaged in a [sic] altercation. She heard gunshots after passing through the area and returned to the scene.

. . . .

Pittsburgh Police Officer James Fazio responded to the report of the incident. He discovered a vehicle at the scene that had sustained damage to the body, flat tires and smashed windows [which had been done by the crowd of individuals who had been engaged in the confrontation with the three black men because that car was the car they believed belonged to the three]. . . . On the front passenger seat, police discovered a pamphlet for a Glock semi-automatic pistol and fifteen Pennsylvania license plates. Police also found a total of six .40 caliber shell casings and two bullet fragments at the scene on Butler Street.

On July 12, 1993, Georgia Police Officer Timothy Charles Scott was on duty in uniform and a marked vehicle. A man in a vehicle with Pennsylvania tags was driving ahead of the officer and suddenly flagged officer Scott to the side of the road. Appellant asked Officer Scott for directions and then left. Officer Scott decided he wanted to question the man and so he attempted to stop the vehicle. The vehicle sped off, and the two cars ended up in a high-speed chase into a neighboring county, where Office Scott finally stopped Appellant, who was apprehended and returned to Pittsburgh. Appellant was to appear for trial on January 18, 1995, but failed to do so. An arrest warrant was issued.

Georgia Police Officer Thomas Shaw was in uniform on patrol in a marked car on March 25, 1995, when he saw a gold-colored Mitsubishi Eclipse with a Pennsylvania license plate parked at a roadside barbecue restaurant. Officer Shaw pulled off and waited for the driver to exit the restaurant. A black male, approximately Appellant's height, approached the car, and when asked, produced a temporary Georgia driver's license in the name of Gregory Collins. His address was listed as 771 Pinehurst Terrace, Atlanta, and his date of birth as October 26, 1961. Officer Shaw detained the man to check his information by computer but was unable to do so due to a computer problem. Officer Shaw

released the individual but kept the vehicle. On March 25, 1995, that vehicle was searched, and police discovered a .40 caliber semi-automatic Glock pistol.

On April 15, 1995, Officer Scott Tiffin of the Grantville Georgia Police Department lawfully stopped a vehicle. The driver, Appellant, produced a permanent driver's license with the name Gregory Collins, date of birth, October 26, 1961, and address 771 Pinehurst Terrace, Atlanta. Officer Triffin later determined that the driver was actually Appellant and that a warrant had been issued for him in connection with the Lawrenceville shooting. At that point, Appellant was taken into custody and returned to Pennsylvania.

Dr. Robert Levine, a criminalist in the Allegheny County Crime Lab, testified that he received from the police six spent .40 caliber cartridge cases and several bullet fragments from the scene of the Butler Street shooting. He also received the Glock .40 caliber semi-automatic pistol on May 4, 1995 that Georgia police recovered from the vehicle Appellant was driving. Dr. Levine testified that he examined the weapon and the casings recovered from the scene of the Lawrenceville shooting and determined that the casings had been fired from the .40 caliber Glock found in Appellant's vehicle in Georgia.

Dkt. [17-9] at 27 to 31.

Petitioner raises the following issues in this habeas petition:

A. Trial counsel was ineffective for failing to identify, interview, subpoena, and/or utilize at trial the available testimony of numerous exculpatory eyewitnesses who were identified in available police reports and who had materially exculpatory information [namely, the following witnesses].

    1). Mr. B. McDonald . . . .
    2). Mr. Micheal [sic] Gunde . . . .
    3). Mr. Daniel Gunde . . . .
    4). Anna Marie Fettis . . . .
    5). Mr. Terrence Mullins . . .
    6). Mr. Chuck Curcio . . . .
    7). Mr. Kenneth Osburn . . . .
    8). Mr. Steve Bocka . . . .
    9). Mr. James Fettis . . . .
    10). All of the City of Pittsburgh Police Officers and Detectives who prepared the above [eyewitness] reports [from the foregoing witnesses].

B. The only eyewitness who claims to have seen Mr. Grant shoot Mr. Mioduski was Marsha Fettis. Trial counsel was ineffective in failing to adequately investigate this case so as to properly cross-examine and impeach prosecution

witness Marsha Fettis with many available prior inconsistent statements and
significant disparities and discrepancies with other evidence in numerous critical
areas, including but not limited to the following . . . .

C.  Trial counsel was ineffective in failing to interview all of the afore-mentioned
witnesses identified in police reports, in failing to seek appointment of an
investigator to ensure that all known eyewitnesses had been interviewed and
subpoenaed for trial, and in failing to identify and use evidence that demonstrate
[sic] that the petitioner was not the shooter.

D.  Trial counsel was ineffective in failing to object and preserve objections to the
trial court's ruling which declined to instruct the jury regarding numerous
materially [sic] inconsistencies in eyewitness identification testimony. . . . Trial
counsel was ineffective in failing to request a Kloiber charge regarding
inconsistent and qualified identification testimony of Marsha Fettis and Crystal
Groubert . . . . .

E.  Trial Counsel was ineffective in failing to seek suppression of out-of-court and
in-court identifications of Ms. Fettis, which directly resulted from impermissibly
suggestive and tainted pre-trial and trial confrontations and illegal police conduct.
. . . .

F.  Trial Counsel was ineffective in failing to seek the suppression of the in-court
identification of Crystal Groubert which resulted from unreliable, tainted and
illegal pretrial and trial confrontations. . . .

[Dkt. [4] at 6 to 15]

G. Trail [sic] counsel was ineffective in failing to properly investigate the case so
as to disclose and utilize materially exculpatory information.

[Dkt. [31] at 4[4]]

H.  Prior appellate counsel did not recognize or raise any of the foregoing claims
at the evidentiary hearing or on direct appeal.  Appellate counsel was ineffective
in failing to properly investigate the case, in failing to secure the relevant
witnesses and documents for the evidentiary hearing, in overlooking and waiving
the foregoing claims, in failing to allege the ineffectiveness of trial counsel for all
the reasons which are specifically stated above. . . . .

---

[4] Petitioner missed a page in his habeas petition where Issue G was but later indicated what that
issue was.  Dkt. [37] (explaining the situation and directing Respondents to file a supplemental answer to
address Issue G).

I.  Trial counsel was ineffective in failing to elicit trial testimony challenging the eyewitness identification of the petitioner by Commonwealth witness Marsha Fettis . . . .

J.  Trial Counsel was ineffective in stipulating to the presence of a gun and driver's license in a car allegedly driven by the Petitioner.
    Trial counsel objected at least twice to the chain of custody of a gun found in a car in Georgia [in March of] 1995.

K.  Trial counsel was ineffective for failing to call James Fettis as a defense witness.

[L.]  The Trial Court erred in its answer to one of the questions put forth by the jury. . . .

Dkt. [4] at 17 to 20.

Petitioner was tried twice.  The first trial ended in a hung jury.   The second trial ended with Petitioner being convicted of the shooting based upon, inter alia, (1) the eyewitness testimony of Ms. Groubert who placed Petitioner at the scene of the melee with a gun, (2)  the eyewitness testimony of Ms. Marsha Fettis who witnessed the shooting and identified Petitioner as the shooter both in a photographic array shortly after the shooting and at both trials and (3) based upon the testimony of the forensic expert Dr. Levine who testified that the gun in the car being driven by a Mr. "Gregory Collins" in Georgia was the gun which fired the bullet casings found around the scene of the melee in Lawrenceville.

The Commonwealth filed its Answer, which included, inter alia, the transcript of the trial from Petitioner's first trial.  Dkt. Nos. [16] to [18].  Petitioner then sought to have the Respondents produce a transcript of the PCRA proceedings as well as the second trial transcript and a transcript of the preliminary hearing of one of Petitioner's co-actors, Jerome Bronson.  The Court ordered the Respondents to supply two of the transcript requests but denied the request for

the preliminary hearing transcript in the case of Jerome Bronson. Dkt. [20]. Petitioner filed a motion for reconsideration of the order denying his request for Jerome Bronson's preliminary hearing transcript. Dkt. [24]. The Court directed the Respondents to file a response to the motion for reconsideration. Dkt. [25]. They did so and in that response, they provided a copy of the preliminary hearing transcript in the case of Jerome Bronson, albeit with pages 3 to 5 missing. Dkt. [26]. Petitioner filed a traverse to the answer, Dkt. [28], wherein he responded to the Respondents' contentions that Petitioner failed to exhaust many of his claims, and that he procedurally defaulted many of his claims. Petitioner did not respond to the Respondents' contention that his claims are meritless because Petitioner argued that he could not do so without conducting discovery. Simultaneous with the filing of the traverse, Petitioner filed a motion for leave to conduct discovery. Dkt. [31]. The Court ordered the Respondents to file a response to the motion for leave to conduct discovery, Dkt. [32] and the Respondents did file their response pointing out that Petitioner was not entitled to conduct discovery given that he had an evidentiary hearing in the State Courts and that he failed to raise many of the issues he raises now in this habeas petition and that he failed to show good cause for such failure. Dkt. [34]. Petitioner filed a sur-reply to the Respondents' response. Dkt. [35]. The Court denied Petitioner's motion for leave to conduct discovery. Dkt. [36]. More recently, Petitioner filed a motion for reconsideration of that order denying him leave to conduct discovery, Dkt. [49], which we will address herein below.

Meanwhile, the Respondents, as directed, Dkt. [37], filed a supplemental answer to Issue G, which issue had been missing from the original habeas petition. Dkt. [38]. Petitioner eventually filed his supplemental traverse to the supplemental answer. Dkt. [47]

Petitioner also filed a motion to compel the Respondents to provide 22 photographs entered into evidence at both of Petitioner's trials. Dkt. [46]. The Court directed the Respondents to file a response. Dkt. [48]. Inexplicably, Petitioner filed a second motion to compel, Dkt. [50] that was identical to Dkt. [46]. The Respondents filed their response to the motion to compel, Dkt. [51], wherein they represented that the original photographs with exhibit stickers were lost in the intervening 15 years but that they did provide to Petitioner and to this court copies of all photographs that were produced to Petitioner's defense attorney and further represented that all photographs that were admitted to trial are contained in the photographs that were provided in discovery. Dkt. [51] at ¶¶ 3 to 6. Consequently, the Court denied as moot Petitioner's request for the photographs. Dkt. [52]. Petitioner filed a sur-reply to the Respondents' response, indicating that he believed without the numbered exhibit stickers on the photographs, it would be impossible for this court to conduct its habeas review. Dkt. [53]. Petitioner's belief was unfounded. Such has not hindered this court's review.

**B. AEDPA is applicable**

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, tit. I, §101 (1996) (AEDPA), which amended the standards for reviewing State court judgments in federal habeas petitions filed under 28 U.S.C. § 2254, was effective April 24, 1996. Because petitioner's habeas petition was filed in the year 2007, AEDPA is applicable to this case. Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000).

Where the State Courts have reviewed a federal issue presented to them and disposed of the issue on the merits, and that issue is also raised in a federal habeas petition, AEDPA provides

the applicable deferential standards by which the federal habeas court is to review the State

courts' disposition of that issue. See 28 U.S.C.§ 2254(d) and (e).

In Williams v. Taylor, 529 U.S. 362 (2000), the Supreme Court has expounded upon the

standard found in 28 U.S.C. § 2254(d). In Williams, the Court explained that Congress intended

that habeas relief for errors of law may only be granted in two situations: (1) where the State

court decision was "contrary to . . . clearly established Federal law as determined by the Supreme

Court of the United States" or (2) where that State court decision "involved an unreasonable

application of[] clearly established Federal law as determined by the Supreme Court of the

United States." id. at 404-05 (emphasis deleted). The Court explained the two situations in the

following terms:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the
> state court arrives at a conclusion opposite to that reached by this Court on a
> question of law or if the state court decides a case differently than this Court has
> on a set of materially indistinguishable facts. Under the "unreasonable
> application" clause, a federal habeas court may grant the writ if the state court
> identifies the correct governing legal principle from this Court's decisions but
> unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 412-13. The Court of Appeals for the Third Circuit has also elucidated the

"contrary to" clause by noting that "it is not sufficient for the petitioner to show merely that his

interpretation of Supreme Court precedent is more plausible than the state court's; rather, the

petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." Werts

v. Vaughn, 228 F.3d at 197 (quoting Matteo v. Superintendent, SCI-Albion, 171 F.3d 877, 888

(3d Cir. 1999)(en banc)). Moreover, it is Petitioner's burden to prove the State court decision is

either contrary to or an unreasonable application of clearly established federal law. See Matteo,

171 F.3d at 888; Werts v. Vaughn, 228 F.3d at 197.

AEDPA also permits federal habeas relief where the State court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. 2254(d)(2). Although Petitioner casts some of his arguments in terms of an unreasonable determination of the facts, the court concludes that Petitioner failed to carry his burden to establish that the factual determinations of the State Courts were unreasonable.

**C. Discussion**

All but one of the issues listed above (i.e., Issue L) involve claims of ineffective assistance of counsel. Hence, we turn initially to the standards for ineffectiveness.

In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the Supreme Court explained that there are two components to demonstrating a violation of the right to effective assistance of counsel. First, the defendant must show that counsel's performance was deficient. This requires showing that "counsel's representation fell below an objective standard of reasonableness." <u>Id</u>. at 688; <u>see</u> <u>also</u> <u>Williams v. Taylor</u>, 529 U.S. at 390-91. In reviewing counsel's actions, the court presumes that counsel was effective. <u>Woods v. McBride</u>, 430 F.3d 813, 821 (7th Cir. 2005)("We view counsel's performance deferentially, with the understanding that there is a great deal of room for disagreement among reasonable attorneys as to the appropriate strategy or tactics to employ in the course of representation, so we indulge the 'strong presumption that counsel rendered reasonably effective assistance.'")

Because the <u>Strickland</u> test is one of objective reasonableness, it does not matter if counsel actually considered the course taken or foregone to determine whether the actions or omissions were objectively reasonable; so long as a hypothetical reasonable attorney could have

done the same, there is no ineffectiveness.  Chandler v. United States, 218 F.3d 1305, 1316 n.16 (11th Cir. 2000).  In light of the strong presumption of counsel's effectiveness and the objective reasonableness standard, the Court of Appeals for the Third Circuit has explained, "[i]t is [] only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance."  United States v. Kauffman, 109 F.3d 186, 190 (3d Cir. 1997)(quoting United States v. Gray, 878 F.2d 702, 711 (3d Cir. 1989)).

Second, under Strickland, the defendant must show that he was prejudiced by the deficient performance.  "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  Strickland, 466 U.S. at 687.  To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  id. at 694; see also Williams, 529 U.S. at 391.  In addition, in undertaking a prejudice analysis, the Court properly considers the strength of the evidence against the defendant because "... a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support."  Buehl v. Vaughn, 166 F.3d 163, 172 (3d Cir. 1999).  The Strickland test is conjunctive and a habeas petitioner must establish both the deficiency in performance prong and the prejudice prong.  See Strickland, 466 U.S. at 687; Dooley v. Petsock, 816 F.2d 885, 889 (3d Cir. 1987).  As a result, if a petitioner fails on either prong, he loses.  Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000);  Foster v. Ward, 182 F.3d 1177, 1184 (10th Cir. 1999).

Petitioner presented some of the ineffective assistance of trial counsel claims in his direct appeal. After his second trial, Petitioner obtained new counsel in the person of Attorney Erika Kreisman, who then raised in the direct appeal before the Superior Court issues of trial counsel's ineffectiveness. The Superior Court remanded the case on direct appeal to the trial court for the trial court to conduct an evidentiary hearing. The issues raised in the direct appeal and that were the subject of the post sentence evidentiary hearing were as follows:

> [¶ 1.Trial] counsel was ineffective in his approach to the eyewitness identification of Marsh Fettis, the only witness who identified Demetrius Grant as the shooter of James Mioduski.
> [¶ 2.] The attorney neglected to elicit from her or the investigating detective that she described the shooter as having a "box haircut." This haircut involves long hair cut sharply and straight across the top. Another actor whose photo was located in the car that he left at the scene, Maurice Bailey, had a box haircut. Mr. Grant did not.
> [¶ 3.] Additionally, Marsha Fettis testified that her son James had argued with the shooter face-to-face earlier in the incident. At the first trial that led to a hung jury, James Fettis could not identify the Appellant [after James had been called to testify].
> [¶ 4.] Yet trial counsel herein neglected to call this man to the stand.
> [¶ 5. Trial counsel was ineffective for stipulating to the evidence of the gun that was involved in the shooting, as being found in a vehicle in Georgia.]
> [¶ 6. Trial Counsel was also ineffective for not arguing against the flight charge, indicating that Petitioner's flight from the jurisdiction could be taken as consciousness of guilt.]

Dkt. [17-7] at 10 to 11 (Direct Appeal Brief post remand and denial of relief in the Trial court following the evidentiary hearing ). Petitioner also raised the claim that the Trial Court erred in admitting evidence of other shootings which occurred that night as part of the melee and for which Petitioner was not charged. Id., at 11. However, he seems to have chosen not to raise this issue of the Trial Court's alleged error nor has he raised the issue paraphrased in ¶ 6 above in his federal habeas petition.

We turn then to those claims of trial counsel's ineffectiveness which were raised on direct appeal and which were the subject of the post remand evidentiary hearing, all of which were addressed on the merits by the Superior Court and all of which Petitioner presented in the instant habeas petition.[5]

In disposing of these ineffective assistance claims, the State Courts relied upon the test announced in Commonwealth v. Pierce, 527 A.2d 973 (Pa. 1987).[6]  The Pennsylvania Supreme Court has developed an ineffective assistance standard that requires a petitioner to demonstrate that (1) the underlying claim is of arguable merit, (2) counsel had no reasonable basis for the act or omission in question and (3) but for counsel's act or omission, the outcome of the proceedings would have been different.  See Commonwealth v. Douglas, 645 A.2d 226, 230-31 (Pa. 1994); Commonwealth v. Pierce, 527 A.2d at 975.

This Pennsylvania standard has been found to be materially identical to the test enunciated in Strickland.  Werts, 228 F.3d at 203.  The Third Circuit has ruled that this standard is not "contrary to" Strickland, and therefore, "the appropriate inquiry is whether the Pennsylvania courts' application of Strickland to [petitioner's] ineffectiveness claim was objectively unreasonable, i.e., the state court decision, evaluated objectively and on the merits,

---

[5]  We deem the first two quoted paragraphs from the direct appeal brief to be the equivalent of Issue I raised in the habeas petition, Dkt. [4] at 17 to 18, ¶ I.  We deem the third paragraph and fourth paragraph quoted from the direct appeal brief to be the equivalent of those issues raised in the habeas petition at Dkt. [4] at 10, ¶ A.9; and at 19, ¶ K.  We deem the fifth paragraph paraphrased from the direct appeal brief to be the equivalent of the issue raised in the habeas petition at Dkt. [4] at 18 to 19, ¶ J.  We deem the sixth and final paragraph paraphrased from the direct appeal brief to be abandoned by Petitioner as he does not appear to raise it in the habeas petition.

[6]  The State Trial Court directly cited to Pierce.  Dkt. [17-6] at 5.  Although the Superior Court did not directly cite to Pierce, it utilized the three prong test of Pierce, simply citing another Pennsylvania Supreme Court case for the Pierce test.  Dkt. [17-9] at 31.

resulted in an outcome that cannot reasonably be justified under <u>Strickland</u>." <u>Werts</u>. 228 F.3d at 204. Because the Superior Court decided Petitioner's claims of ineffective assistance of counsel under the standards of <u>Pierce</u> and those standards are essentially the same as the <u>Strickland</u> standard, this court is required to apply the deferential standard of 28 U.S.C. § 2254(d), which demands that a habeas petitioner demonstrate that the State Court's adjudication of the federal claim resulted in a decision that was contrary to Supreme Court precedents or an unreasonable application of federal law. Pursuant to the holding of <u>Werts</u>, Petitioner is barred from arguing that the Superior Court's decision applying the <u>Pierce</u> standard is contrary to the standard announced in <u>Strickland</u>. Petitioner could argue the second sense of "contrary to," i.e., the Superior Court reached a different result from that of the federal Supreme Court on a set of materially indistinguishable facts.

However, Petitioner has not argued and does not point to any federal Supreme Court decision, in existence at the time that the State Courts rendered their decisions in this case, that has a set of facts that are materially indistinguishable from Petitioner's case where the outcome was different from the outcome reached by the Superior Court herein. <u>Williams</u>, 529 U.S. at 412 (analyzing whether a state court decision is "contrary to" Supreme Court precedent requires analysis of the "holdings as opposed to the dicta, of this Court's decisions as of the time of the relevant state court decision."). Accordingly, petitioner has not shown that the Superior Court's decision in this case was contrary to clearly established federal law as determined by the United States Supreme Court, in either of the two senses of "contrary to."

Thus it remains open to Petitioner to show that the Superior Court's decision was an unreasonable application of federal law. Petitioner has not carried his burden to show that the

Superior Court's decision constituted an unreasonable application of federal law concerning ineffective assistance of counsel. He never explicitly argues that the State Courts' adjudication of his claims was contrary to or an unreasonable application of any **particular** extant United States Supreme Court precedent. Hence, he fails to carry his burden to prove entitlement to relief on the claims of trial counsel's ineffectiveness.

To reiterate, Petitioner has failed to carry his burden to show that the State Court's adjudication of his claims of ineffectiveness of trial counsel, which were both raised and addressed on direct appeal, constituted an unreasonable application of United States Supreme Court precedent. Hence, he is not entitled to relief on those claims. This disposes of the following four issues raised in the habeas petition: (1) Issue I, Dkt. [4] at 17 to 18, ¶ I; (2) Issue A.9, Dkt. [4], at 10; (3) Issue K, Dkt. [4] at 19, ¶ K and (4) Issue J, Dkt. [4] at 18 to 19, ¶ J.

We next turn to the remaining issues of trial counsel's ineffectiveness not raised on direct appeal by Attorney Kreisman and raised for the first time in the PCRA proceedings.

Because Petitioner received new counsel, i.e., Attorney Kreisman, to represent him on direct appeal after the second trial was completed Petitioner was required by state law under pain of waiver to raise all claims of prior trial counsel's ineffectiveness in the direct appeal. Pennsylvania had a procedural rule of waiver[7] that states where an attorney provides ineffective assistance of counsel, then the criminal defendant must raise that attorney's ineffectiveness at the first opportunity when the defendant is represented by new counsel, otherwise the claim of ineffectiveness is waived. See, e.g., Commonwealth v. Green, 709 A.2d 382, 384 (Pa. 1998)("It

---

[7] This rule was abrogated on December 31, 2002 by Commonwealth v. Grant, 813 A.2d 726 (Pa. 2002). Attorney Kreisman's brief to the Superior Court filed after the evidentiary hearing was filed on or about December 1, 1999. Dkt. [17-7] at 1.

is well-established that a claim of ineffectiveness must be raised at the earliest possible stage in the proceedings at which counsel whose effectiveness is questioned no longer represents the defendant."); Commonwealth v. Laird, 726 A.2d 346, 354 (Pa. 1999) ("As claims of ineffectiveness of prior counsel must be raised at the first opportunity when that counsel no longer represents the petitioner [and here that did not happen], the issue has been waived."). Instantly, Petitioner was represented on appeal from his conviction by Attorney Kreisman. In the appeal brief filed by her, she never raised the many issues of trial counsel's ineffectiveness that Petitioner now raises in his habeas petition, other than the ones we have already addressed. It may well be argued that Attorney Kreisman was ineffective for failing to raise these issues of trial counsel's ineffectiveness. And indeed, under the law of Pennsylvania, the only proper way to have these other claims of trial counsel's ineffectiveness considered at all would be via a layered ineffective assistance claim, i.e., that Attorney Kreisman was ineffective for failing to raise on direct appeal these many other claims of trial counsel's ineffectiveness. See, e.g., Commonwealth v. McGill, 832 A.2d 1014 (Pa. 2003)(explaining how to properly raise a layered ineffectiveness claim under state law). And, in fact, Petitioner, in the PCRA proceedings, represented by new counsel other than Attorney Kreisman, did raise the issue of Attorney Kreisman's ineffectiveness for failing to raise these many other claims of trial counsel's ineffectiveness. Dkt. [18-3] at 13, ¶ H. It is this precise issue, i.e., of Attorney Kreisman's putative ineffectiveness on direct appeal that was properly raised and preserved in the state courts and was not procedurally defaulted and hence is properly before this court. It is to that issue we now turn. All other issues of trial counsel's ineffectiveness have been procedurally defaulted and may only be addressed through the analytical lens of appellate counsel's ineffectiveness. Of

course, as part of the requirement to establish that appellate counsel was ineffective for raising a claim of trial counsel's alleged ineffectiveness, it would be necessary to establish the ineffectiveness of trial counsel[8] because appellate counsel could not be deemed ineffective for failing to raise a claim of trial counsel's alleged ineffectiveness that was not meritorious.  Under both federal and state law of ineffectiveness, counsel cannot be deemed ineffective for failing to raise a meritless claim. Werts v. Vaughn, 228 F.3d at 203 ("counsel cannot be ineffective for failing to raise a meritless claim."); Commonwealth v. Saranchak. 866 A.2d 292, 302 (Pa. 2005)("counsel cannot be ineffective for failing to raise a meritless claim").

The Superior Court in its PCRA opinion, addressed the issues of ineffectiveness by choosing to focus on the claims of trial counsel's ineffectiveness and showing that they were not meritorious and, inferentially, that direct appellate counsel could not be deemed ineffective for failing to raise these issues.  See Dkt. [18-9] at 27 to 37.   In doing so, again, the Superior Court utilized the Pierce test. id., at 27, n.1.  Hence, as explained above, Petitioner cannot show this is contrary to United States Supreme Court precedent in the sense of a wrong principle of law.  Nor does he argue that it was contrary to extant United States Supreme Court precedent in the sense

---

[8]  As explained by the Pennsylvania Supreme Court:

> As we explained in McGill and expounded upon in Commonwealth v. Rush, 576 Pa. 3, 838 A.2d 651 (2003), review of the issue of ineffectiveness of trial counsel is merely a component of the claim at issue-that challenging the effectiveness of subsequent counsel. Therefore, to demonstrate that a "layered" claim of appellate counsel's ineffectiveness has arguable merit, the petitioner must develop all three prongs of the Pierce test as to the ineffectiveness of trial counsel. McGill, 832 A.2d at 1022; Rush, 838 A.2d at 656.  In other words, if a petitioner fails to develop any of the three Pierce prongs regarding the underlying issue of trial counsel ineffectiveness, he or she will have failed to establish the arguable merit prong of the claim of subsequent counsels' ineffectiveness.

Commonwealth v. Hall, 872 A.2d 1177, 1183-84 (Pa. 2005)(footnote omitted).

of the Superior Court reached a different result from that of the federal Supreme Court on a set of materially indistinguishable facts. Thus, it remains open to him to show that the Superior Court decision was an unreasonable application of United States Supreme Court precedent.

He has failed to do so. The Superior Court essentially determined that the claims of ineffectiveness of trial counsel for failing to call other witnesses, failing to utilize inconsistencies between the Marsha Fettis' testimony in the first trial and at the second trial to impeach her, etc., were meritless. We find these determinations to be abundantly reasonable. Likewise, the Superior Court determined that Petitioner was not prejudiced by the alleged ineffectiveness of trial counsel's actions. See, e.g., Dkt. [18-9] at 33 (finding no prejudice and addressing claims 1, 2, 3, 4 and 9 of the PCRA appeal brief, Dkt. [18-7] at 10, which are claims contained in the habeas petition as follows: Issue 1 of the PCRA Appeal is not contained in habeas petition; Issue 2 of PCRA Appeal is Issues A. 1 -10 of habeas petition, Dkt. [4] at 6 to 10; Issue 3 of PCRA Appeal is Issue B of habeas petition, Dkt. [4] at 11 to 12; Issue 4 of the PCRA Appeal is issue C of the habeas petition, Dkt. [4] at 13; Issue 9 of the PCRA appeal is Issue H of the habeas petition, Dkt. [4] at 17). Again we find the Superior Court's determinations regarding prejudice abundantly reasonable.

As to the remaining issues which were raised in the PCRA appeal and addressed by the Superior Court and which Petitioner raises in his habeas petition (i.e., Issues D, E, & F[9] of the

---

[9] It is not clear to this Court whether any of the State Courts addressed Issue G because it simply is not clear what Issue G is. However, it appears that Issue G is at least, in part, the same issue as the issue which the Respondents described as Issue G in their original answer. Compare Dkt. [47] at 6 (Petitioner's traverse to the Commonwealth's Supplemental Answer wherein he raises the claim regarding the testimony of Detective Billups at the first trial and then the use of a different Detective at the second trial regarding where the bullet shell cases were ejected ) and Dkt. [18-7] at 10, ¶ 8 (statement of questions presented in the Superior Court brief on PCRA appeal: "Whether the PCRA court erred in

habeas petition), the Court finds that Petitioner fails to show that the determinations are an unreasonable application of United States Supreme Court precedent. Accordingly, Petitioner fails to carry his burden to show entitlement to relief.

To the extent that Petitioner attempts to argue that the State Courts' adjudication of his claims constituted an unreasonable determination of the facts in light of the evidence presented, the Court is unpersuaded. All of Petitioner's arguments in this regard depend upon either (1) taking the record in a light most favorable to him and drawing all inferences in his favor[10] rather than taking the evidence in a light most favorable to the Commonwealth as the verdict winner and drawing inferences in favor of the Commonwealth or (2) out right distortion of the record or (3) alleged evidence *de hors* the record.

For an example of Petitioner's taking the record in a light most favorable to him, he argues that trial counsel was ineffective for failing "to identify, interview, subpoena and/or utilize

---

failing to find trial counsel ineffective for failing to properly investigate this case so as to use testimony from a detective regarding the ejection of a cartridge . . .") with Dkt. [16] at 18 (Respondents' original answer, describing Issue G as being "Whether the PCRA Court erred in failing to find trial counsel ineffective for failing to properly investigate the case so as to use testimony from a detective regarding the ejection of a cartridge from the gun used to shoot the victim in this case that would have contradicted the testimony of Marsh Fettis."). The Superior Court did address this issue of differing detectives at the two trials and the ejection of shell casings in the PCRA appeal. Dkt. [18-9] at 35. To the extent that Issue G in the habeas petition is the same as the Issue addressed by the Superior Court, this Court finds that the Superior Court's adjudication of this claim, in concluding that there was no prejudice, was eminently reasonable. To the extent that Issue G is not the same as Issue 8 in the Superior Court PCRA Appellate Brief, then Petitioner has failed to show that he has fairly presented this claim to the State Courts and hence, he procedurally defaulted any claim that is not Issue 8 in the Superior Court PCRA Appellate Brief.

10  The law is to the contrary.  See, e.g., Jackson v. Virginia, 443 U.S. 307, 326 (1979)("a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume--even if it does not affirmatively appear in the record--that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.");  Farnsworth v. Edwards, 947 F.2d 948 (Table), 1991 WL 218007, at *2 (7th Cir. 1991) ("This court must review a habeas corpus petition by construing the evidence in the light most favorable to the government.").

at trial the available testimony of . . . ."  Mr. James Fettis.  Dkt. [4] at 6, ¶ A & at 10, ¶ 9.
However, at the post sentencing remand hearing, his trial counsel testified that he was almost
certain that he had in fact spoken with Mr. Fettis in the hallway of the courthouse during the trial
and determined that his testimony would be unhelpful.  See State Court Record transcript of
hearing held May 15, 1997 at 31 (in response to the question as to "Do you know why you didn't
call him to testify?", trial counsel responded: "The way I remember it, I talked to him out in the
hallway and his overall testimony, in my opinion wasn't going to help Mr. Grant's case.").
Hence, contrary to the allegation in the habeas petition, the record, taken in a light most favorable
to the Commonwealth as the verdict winner, indicates that trial counsel **did** interview Mr. James
Fettis and assessed that he would be unhelpful.

Another example is Petitioner's attack on Ms. Groubert's in-court identification of
Petitioner, who only put Petitioner at the scene but did not identify him as the person who shot
the victim, Mr. Mioduski.  Petitioner argued that trial counsel was ineffective for failing to seek
to suppress the in-court identification.  Specifically, Petitioner argued that "[i]mmediately
following this identification, Ms. Groubert admitted that her eyesight was bad and that she could
not see the chalkboard . . .  The chalk board was only ten to fifteen feet away from Ms. Groubert
at the time, although the petitioner was more than thirty to forty feet away from her at the time of
the in-court identification."  Dkt. [4] at 15.  In fact, Ms. Groubert did not testify that she could
not see the chalkboard, rather she could not see some numbers on the board in response to a
question as to when or where she started to slow down for the red light at the intersection of 54th
Street and Butler Street, which is where the melee was taking place.  Specifically, Ms. Groubert
testified that "Yeah, we started slowing down, I can't see the numbers [apparently, house address

numbers[11]] from here, my eyes aren't that great, but I'd say between 530, I guess  – I can't see from here."  Dkt. [16-7] at 8.  The sentence is capable of at least two constructions and, hence, is by definition, ambiguous.   One construction is: my eyes are not that great, meaning thereby my eyesight is poor.  The second possible construction is that my eyes are not **that** great, meaning, my eyes are good but not so great, like a Superman's eyes to see such small numbers.  Given the ambiguity of the statement and that it is Petitioner's burden on collateral attack to show entitlement to relief, an ambiguous record simply does not carry Petitioner's burden.  Higgason v. Clark, 984 F.2d 203, 208 (7th Cir. 1993)("On collateral attack, a silent record supports the judgment; the state receives the benefit of a presumption of regularity and all reasonable inferences. . . . His [i.e., habeas Petitioner's] entire position depends on persuading us that all gaps and ambiguities in the record count against the state. Judgments are presumed valid, however, and *Parke* emphasizes that one who seeks collateral relief bears a heavy burden.");  Robinson v. Smith, 451 F.Supp. 1278, 1284 n. 6 (W.D.N.Y. 1978)(on habeas review, the court stated that "In my own independent review of the record, I have resolved ambiguities against petitioner"); Patrick v. Johnson, NO. CIV.A.3:98-CV-2291, 2000 WL 1400684, at *9 (N.D. Tex. Aug. 23, 2000)("whatever ambiguity exists in the record must be resolved in favor of the trial court's finding.").  So, the record taken in a light most favorable to the Commonwealth merely indicates that Ms. Groubert could not see the house numbers or some other numbers on the chalkboard and her statement that "my eyes aren't that great" is taken to mean, not that her eyesight is bad but rather that her eyesight, as good as it is, isn't **that** great to see such small numbers.

---

[11] See, e.g., Dkt. [18-2] at 42 (diagram of scene, listing some house numbers).

In any event, all that Ms. Groubert's testimony did was to establish that Petitioner was present at the scene and that he held a gun in the air. Such could not possibly have prejudiced Petitioner, because in fact, it came out in the post sentencing remand hearing that Petitioner admitted to his trial counsel that he was present at the scene. State Court Record Transcript of hearing dated May 15, 1997 at 47 to 48 (in response to a question of the trial counsel as to whether Petitioner admitted to being at the scene, trial counsel stated: "I believe so" and at p. 49, trial counsel stated more conclusively, "He was at the scene."). The record, taken in a light most favorable to the Commonwealth, also suggests that Petitioner admitted to his trial counsel that he also had a gun. Id., at 49 ("Q. He indicated to you that he had the gun that night. A. That I am not exactly sure of, because there were - - **everybody** had a gun. Which gun, I am - - ") (emphasis added).

As for any of Petitioner's arguments that the State Courts' determination of the facts was unreasonable, where such arguments are based on evidence *de hors* the record as, for example, the alleged ineffectiveness of direct appellate counsel, he loses, because we have no evidence of record at all as to Attorney Kreisman's rationale for raising the issues she did in fact raise and for not raising the other issues of trial counsel's supposed ineffectiveness, that Petitioner raised in the PCRA proceedings. Chandler v. United States, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000) ("An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption. Therefore, where the record is incomplete or unclear about [counsel]'s actions, we will presume that he did what he should have done, and that he exercised reasonable professional judgment.") (internal quotation marks omitted), cert. denied, 531 U.S. 1204 (2001).

Insofar as he argues that he should be entitled to conduct discovery or have an evidentiary hearing in this Court to rectify the lack of evidence in the record to support some of his claims, the Court already determined, in addressing his motion for leave to conduct discovery, that he had not shown good cause so as to merit such evidentiary enhancement of the record. Dkt. [36].

In his motion for reconsideration, Dkt. [49], of the Court's order, Dkt. [36], denying him leave to conduct more discovery, Petitioner argues that it was not his or his counsel's fault for failing to adduce the necessary evidence of, for example, the 8 civilian witnesses to bolster his ineffective assistance of trial counsel claims. See Dkt. [49] at 3 ("Discovery in the instant case is not precluded by §2254(d)(2) because the failure to develop evidence in state court for Claims A, E and K was not the fault of either the petitioner or his counsel."). The state PCRA court refused to conduct a hearing on Petitioner's issues as to the allegedly missing 8 civilian witnesses (i.e., the witnesses listed under Issue A 1-10 of the current habeas petition) because the PCRA counsel failed to append to the PCRA petition certifications of the witnesses' names, addresses, dates of birth and substance of testimony as required under 42 Pa.C.S. § 9545(d)(1).[12] Dkt. [18-5] at 42 to 43. Petitioner contends that it was not his PCRA counsel's fault because prior to dismissing the petition without a hearing, the PCRA court was required to give notice to Petitioner/his counsel of the deficiency of the lack of certifications. Even if however the PCRA were supposed

---

[12]  42 Pa.C.S. §9545(d)(1) Provides as follows:

(1) Where a petitioner requests an evidentiary hearing, the petition shall include a signed certification as to each intended witness stating the witness's name, address, date of birth and substance of testimony and shall include any documents material to that witness's testimony. Failure to substantially comply with the requirements of this paragraph shall render the proposed witness's testimony inadmissible.

to do so, counsel is required to know the law[13] and the fact that he failed to do so, is attributable to counsel and no construction of the English language would warrant a conclusion that Petitioner's counsel was not at fault. And this is true, even if the PCRA court was also at fault for not advising Petitioner's counsel of the defect. In fact, the Superior Court noted that counsel did not attempt to rectify the omission on appeal even after being apprised of the deficiency. Dkt. [18-9] at 31 ("Current counsel has asked the we remand this matter back to the PCRA Court so that the record can be properly developed [i.e., certifications can be obtained]. However, counsel has given no indication that such development can be achieved. There is no indication at all that even now such affidavits [sic] can be supplied.").[14]

Petitioner also argues that he did supply the required certifications as attachments to the PCRA counseled petition. Dkt. [49] at 3 (citing Commonwealth Ex. 21 and 22, i.e., Dkt. [18-2] at 24 to 34; 40 to 45 and Dkt. [18-3] at 18 to 28; 34 to 39). What Petitioner is apparently referring to are the police reports taken from the various witnesses which were appended to his counseled PCRA petitions. That such reports do not satisfy the certification requirement under State law is apparent to this Court. Regardless of whether Petitioner made this same argument to

---

[13] Folks v. State Farm Mut. Ins. Co., Slip Copy, 2008 WL 4636195, at *6 (10th Cir. 2008) ("attorneys are 'deemed to have knowledge of the applicable statutes and case law.'"); B.K.B. v. Maui Police Dept., 276 F.3d 1091, 1106 (9th Cir. 2002)("all attorneys are presumed to know the law"); Rouhib v. Zurbrick, 67 F.2d 570, 570 (6th Cir. 1933)("counsel (most certainly counsel) are presumed to know the substantive law governing the prosecution of appeal and error proceedings and the preservation of questions for consideration of the appellate tribunal").

[14] Petitioner makes much of the fact that the Superior Court apparently required that he obtain affidavits. Dkt. [49] at 5. However, it is clear to this court that the Superior Court used the term "affidavits" to merely signify the "certifications" required under 42 Pa.C.S. §9545(d)(1). Hence, the Superior Court merely reasoned that his PCRA appeal counsel failed to show that upon any requested remand, he could in fact meet the requirements of Section 9545(d)(1).

the State Courts, the State Courts obviously had the counseled PCRA petitions with the appended police reports and nonetheless held that Petitioner had not complied with the certification requirement under State law. In any event, Petitioner or his counsel were clearly at fault for not complying with published law of the State easily accessible to any attorney. Accordingly, Petitioner's request for reconsideration is denied.

Lastly, even if, for the sake of argument, this court were to review Petitioner's claims de novo, something to which he is clearly not entitled under AEDPA, the court would reach the same conclusion as the State Courts. As to all of the ineffective assistance of counsel claims, the court would conclude that in light of the evidence presented in the State Court record, Petitioner could not establish prejudice. This evidence includes, the evidence adduced at the post sentence remand hearing via his trial counsel's testimony,[15] which is Petitioner's admission to his trial counsel that he was at the scene of the melee and the additional apparent admission that Petitioner had a gun, plus other evidence of record including the eyewitness identification of Petitioner as the shooter of the victim, plus the forensic evidence that links Petitioner to the gun found in Georgia as the gun which fired the shots that deposited shell casings very close to the scene of the Mr. Mioduski's shooting. All this sufficiently establishes to this Court that Petitioner could not carry his burden to prove prejudice. Indeed, there is not one iota of evidence

---

[15] See e.g., Wiggins v. Smith, 539 U.S. 510, 536 (2003)(in conducting its prejudice analysis under Strickland, the court considered evidence adduced at the state post conviction hearing and declared that "we evaluate the totality of the evidence-'both that adduced at trial, **and the evidence adduced in the [state] habeas proceeding[s]**.'")(quoting Williams v. Taylor, 529 U.S., at 397-398 (emphasis added by the Wiggins Court); Bottoson v. Moore, 234 F.3d 526, 534 (11th Cir. 2000)(The appropriate analysis of the prejudice prong of Strickland requires an evaluation of 'the totality of the available mitigation evidence-both that adduced at trial, and the evidence adduced in the habeas proceeding-in reweighing it against the evidence in aggravation.'").

in this record that Attorney Kreisman afforded Petitioner ineffective assistance on direct appeal in raising the issues that she in fact raised.  The standard for assessing the effectiveness of trial and appellate counsel is the same, whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial or appeal cannot be relied on as having produced a just result.  <u>Mason v. Hanks</u>, 97 F.3d 887, 892 (7th Cir. 1996).  As the Supreme Court has declared "appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal. . . . [I]t is still possible to bring a <u>Strickland</u> claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent. *See, e.g., Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986) ('Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome')."  <u>Smith v. Robbins</u>, 528 U.S. 259, 288 (2000).  Moreover, "[i]f the omitted issue is so plainly meritorious that it would have been unreasonable to winnow it out even from an otherwise strong appeal, its omission may directly establish deficient performance."  <u>Cargle v. Mullin</u>, 317 F.3d 1196, 1202 (10th Cir. 2003) (internal quotation marks omitted).  On the other hand, "if the omitted issue has merit but is not so compelling, [we must assess] the issue relative to the rest of the appeal, and deferential consideration must be given to any professional judgment involved in its omission;  of course, if the issue is meritless, its omission will not constitute deficient performance."  <u>id.</u> (citing <u>Smith</u>, 528 U.S. at 288).

The court has carefully reviewed the Superior Court's opinion disposing of the PCRA appeal, which addressed Petitioner's claims of ineffectiveness of trial counsel, finding them

essentially without merit. *A fortiori*, appellate counsel, i.e., Attorney Kreisman, cannot be deemed ineffective for failing to raise those meritless claims of trial counsel's ineffectiveness.

Similarly, even if this court afforded de novo review of Petitioner's claims of trial counsel's ineffectiveness, it would conclude that Petitioner failed to establish prejudice.

To summarize, after a thorough review of the Superior Court's opinion it is clear that the Superior Court's adjudication of Petitioner's claims of ineffectiveness is not contrary to, or an unreasonable application of United States Supreme Court precedent nor did those adjudications result in an unreasonable determination of the facts. Accordingly, Petitioner has failed to carry his burden to show entitlement to relief.

Accordingly, as none of Petitioner's issues merits relief, the habeas petition should be denied.[16]

## D. Certificate of Appealability

A certificate of appealability ("COA"), which is a prerequisite for allowing an appeal to a Court of Appeals, should not be issued unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253 (c)(2). A "substantial showing" requires a habeas petitioner to show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right[.]" Slack v. McDaniel, 529 U.S. 473,

---

[16]  Petitioner appears to be uncertain that the court has the entire state court record before it, as evidenced in recent correspondence received by the court, dated January 9, 2009, requesting that the court provide him with a "list of all of the exhibits submitted to this court by the commonwealth in order to determine if the commonwealth has provided this Court with all the necessary exhibit's [sic] . . . ." The court finds that it has all of the state court record, (which was even expanded to include the preliminary hearing transcript of Petitioner's co-actor, Jerome Bronson but with three missing pages), required for it to conduct its review under AEDPA.

484 (2000). See also Walker v. Government of The Virgin Island, 230 F.3d 82, 89-90 (3d Cir. 2000).

Applying this standard to the instant case, the court concludes that jurists of reason would not find it debatable whether the petition fails to state a valid claim of the denial of a constitutional right. Accordingly, a certificate of appealability is properly denied.

Accordingly, the following order is entered:

AND NOW, this 29th day of January, 2009, it is **ORDERED** that the motion for reconsideration, Dkt. [49], and the habeas petition, Dkt. [4], are hereby **DENIED**, as is a Certificate of Appealability.

**Petitioner is advised that he has the right for thirty (30) days to file a notice of appeal from our order denying his petition, see 28 U.S.C. § 2253(a); Fed. R.App. P. 4(a)(1)(A), and that our denial of a certificate of appealability does not prevent him from doing so, as long as he also seeks a certificate of appealability from the court of appeals. See Federal Rule of Appellate Procedure 22(b)(1).**

/s/  Amy Reynolds Hay
United States Magistrate Judge

cc:     Demetrius J. Grant
        FY6063
        SCI Mahanoy
        301 Morea Road
        Frackville, PA 17932

        All counsel of record via CM-ECF